United States District Court
Southern District of Texas
**ENTERED**
October 17, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| YANQIU RACHEL SUN, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:20-cv-04171 |
| § | |
| TETRA TECHNOLOGIES, INC., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant TETRA Technologies, Inc.'s Motion for Summary Judgment. *See* Dkt. 19. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.

## BACKGROUND

In September 2017, TETRA Technologies, Inc. ("TETRA") extended an offer of employment to Plaintiff Yanqiu Rachel Sun ("Sun")—an Asian woman of Chinese origin—to work as a Senior Research Associate. Judy Guy-Caffey ("Guy-Caffey"), TETRA's Technology Center Director, signed the formal offer letter. Throughout her employment with TETRA, Sun reported to Arthur Mack ("Mack"), the Research and Development ("R&D") Manager. Sun's first four months at TETRA earned her an overall rating of "Delivers Expectations" on her 2017 performance review. But by the end of 2018, Sun's first full year at the company, her performance had declined to "Needs Improvement." In Sun's 2018 review, both Mack and Guy-Caffey—Mack's supervisor, and Sun's second-level reviewer—noted that Sun needed improvement in the areas of teamwork, collaboration, and communication. Specifically, Mack wrote that Sun should "continue to improve both her written and spoken English as this is key to her becoming more effective" at communicating. Dkt. 19-6 at 6. Guy-Caffey wrote that Sun "needed . . . more thorough and accurate documentation of experiments so

that others can better understand what has been done and why." *Id.* at 6. Guy-Caffey also suggested regular meetings between herself, Mack, and Sun to provide Sun with the guidance and support she needed to improve her performance. Despite these concerns, both Mack and Guy-Caffey wrote that Sun had "made some positive contributions" during 2018. *Id.* at 5–6.

In Summer 2019, TETRA awarded Sun a three percent merit increase to her salary.[1] That same summer, Sun submitted an abstract to the Society for Petroleum Engineers ("SPE"). In August 2019, SPE accepted Sun's abstract for presentation at the SPE Conference in February 2020. Sun had a deadline of November 2019 to submit the final paper to SPE. Because she would be publishing as a representative of TETRA, Sun first had to clear TETRA's internal review process. Mack and Guy-Caffey observed several problems with the draft of Sun's paper, including "missing" and "bad data." Dkt. 19-4 at 8. Based on their concerns, Guy-Caffey and Mack began meeting with Sun on a weekly basis and suggested that she run additional tests. For whatever reason, Sun "just did not do [the work]" that Mack and Guy-Caffey asked of her; "instead . . . she spent some time doing other stuff that was totally unrelated to [meeting the deadline for her paper]." *Id.* As a result, Mack and Guy-Caffey refused to approve the paper for final submission, Sun missed the deadline, and TETRA lost a presentation slot at the SPE Conference. Shortly thereafter, Mack and Guy-Caffey discussed Sun's ongoing performance issues with various Human Resources personnel and ultimately decided to terminate Sun's employment. Both Mack and Guy-Caffey initialed the memo notifying Sun that TETRA was terminating her employment.

Sun filed a Charge of Discrimination against TETRA with the Equal Employment Opportunity Commission ("EEOC"), which was co-filed with the Texas Workforce Commission. In those filings, Sun asserted that TETRA

---

[1] Neither party offers a specific date, or even a month, for this salary increase. However, a copy of the notice states that Sun "*will be* receiving an increase . . . effective August 3, 2019." Dkt. 23-10 at 2 (emphasis added). Accordingly, Sun could not have been notified of her merit increase award any later than August 2, 2019.

discriminated against her because of her gender, Asian race, and Chinese national origin. The EEOC issued a Notice of Right to Sue on September 21, 2020, and this action was timely instituted on December 7, 2020. In this action, Sun asserts race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981,[2] and Chapter 21 of the Texas Labor Code ("Chapter 21"). TETRA has moved for summary judgment on all three claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that

---

[2] In her Response in Opposition ("Opposition"), Sun states that "it is unclear whether Defendant is moving for summary judgment" as to her § 1981 claim and then provides the legal standard for a hostile work environment claim under § 1981. Dkt. 23 at 18. Yet nowhere in her Complaint do the words "hostile work environment" even appear. *See* Dkt. 1. The deadline for amended pleadings was May 1, 2021. *See* Dkt. 11. That was over a year before Defendants filed their Motion for Summary Judgment. If Sun intended to assert a hostile work environment claim, the time to do so has long since passed. Accordingly, there is no hostile work environment claim before me. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). At the summary judgment phase, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

At the outset, I note that Title VII, § 1981, and Chapter 21 discrimination claims are all analyzed under the same framework. *See, e.g.*, *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) ("[A]nalogous federal statutes and the cases interpreting them guide our reading of [Chapter 21]."). Accordingly, my analysis for all three claims is identical and all references to Title VII apply with equal force to Sun's § 1981 and Chapter 21 claims.

Title VII makes it unlawful for an employer to discharge an employee because of her race or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The familiar *McDonnell Douglas* burden-shifting framework applies to Title VII discrimination claims. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000). Under the *McDonnell Douglas* framework, Sun must first establish a *prima facie* case of discrimination. *See id.* If Sun carries her burden, then TETRA must provide a legitimate, nondiscriminatory reason for Sun's termination. *See id.* If TETRA gives an adequate, nondiscriminatory reason for Sun's termination, the burden shifts back to Sun who "must then prove, by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination." *Id.*

### A.    *PRIMA FACIE* CASE

To establish a prima facie case of discrimination, a plaintiff must show that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that others similarly

situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (cleaned up).

Because the burden for establishing a *prima facie* case is "very minimal," I will assume, without deciding, that Sun has established a *prima facie* case and proceed to the remaining steps of the burden-shifting framework. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) ("To establish a prima facie case, a plaintiff need only make a very minimal showing. Therefore, we assume *arguendo* that [the plaintiff] has established a prima facie case." (cleaned up)). The question then becomes whether TETRA has offered a legitimate, nondiscriminatory reason for terminating Sun's employment and whether Sun can satisfy her pretext burden.

### B.    LEGITIMATE, NONDISCRIMINATORY REASON

"If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted). TETRA has put forth sufficient evidence that would allow a reasonable juror to conclude that it terminated Sun for a legitimate, nondiscriminatory reason. Specifically, TETRA has produced evidence demonstrating poor performance, including a need for "better teamwork, collaboration and communication" (Dkt. 19 at 13), "more thorough and accurate documentation of experiments" (*id.*), and a failure to produce scientific work product for external publication under the company's name to internal review standards. *See id.* at 14–15. Poor performance is a nondiscriminatory reason for terminating employment. *See, e.g.*, *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (poor performance was a nondiscriminatory reason for termination); *Little v. Republic Refin. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (same). Thus, TETRA has satisfied its burden of production, and the burden shifts back to Sun to establish a genuine issue of material fact by showing that TETRA's proffered reason is pretextual.

**C. PRETEXT**

"[Sun] must present substantial evidence that [TETRA's] legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted). This means "[Sun] must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of [TETRA's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "In pretext cases, it is not enough that the company was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true." *Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016). "If the employer offers more than one reason, the plaintiff must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation omitted). "The quality and weight of the evidence determines whether it is substantial." *Id.* at 369.

"Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (quotation omitted). "In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions." *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quotation omitted). An employee's "subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).

To satisfy her burden, Sun attempts to demonstrate that TETRA's explanation is false or unworthy of credence. In that vein, Sun advances six arguments.

### 1. *Mack's Use of Profanity/Racial Slurs*

First, Sun argues that "Mack's repeated use of profanity and race/national origin-based inappropriate comments in the workplace" demonstrate pretext. Dkt.

6

23 at 19. However, the only competent summary judgment evidence Sun offers in support of this argument is that "[a]t one point Mack commented, 'f**cking slow Chinese' in front of Sun during a work discussion." Dkt. 23 at 6. The Fifth Circuit has repeatedly held that "stray remarks," standing alone, are insufficient to create a fact issue on pretext. *See McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 457 (5th Cir. 2019); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). "A 'stray' remark is a remark which is isolated (i.e., not accompanied by other remarks similar in nature) or not accompanied by other evidence indicative of discriminatory animus." *Bumstead v. Jasper Cnty.*, 931 F. Supp. 1323, 1334 (E.D. Tex. 1996). To establish that Mack's comment was more than a "stray remark," Sun must show the comment was (1) related to her protected characteristic; (2) proximate in time to her termination; (3) made by a person with authority over her termination; and (4) related to her termination. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015). Only the first and third elements are satisfied here. "Notably, when the proximity in time of the comments to the challenged employment decision is unclear, we have found the proximity-in-time factor to be satisfied when the comments were routine, or made over a lengthy period of time." *Id.* (cleaned up). According to her deposition, Sun "did not know when such statement was made, the context of the statement, and further admitted it was not made directly to her." Dkt. 19 at 26. Without more, this isolated incident is insufficient to create a genuine issue of material fact.

There is no other *competent* summary judgment evidence that would support Sun's argument that Mack's workplace language demonstrates pretext. Sun's declaration merely states that she "was subjected to repeated instances of harassment by Mack including numerous derogatory comments and remarks about [her national origin, race, and accent]." Dkt. 23-2 at 2. Yet the only specific statement Sun proffers is that Mack would tell her that she "should learn English." *Id.* Yet Sun provides no details regarding time, place, or frequency that would give

7

me the context required to analyze this statement. Such "[c]onclusory declarations are insufficient to create issues of fact." *Owens. v. Circassia Pharms., Inc.*, 33 F.4th 814, 827 (5th Cir. 2022). The same is true of the testimony of Sun's former co-worker, Angus Fursdon-Welsh, who testified that Mack made comments pertaining to Sun's nationality that Fursdon-Welsh "believe[d] were inappropriate for the workplace," but that he was "unable to give . . . a direct quote." Dkt. 23 at 6. And the same is true of Sun's generic assertion that Mack "would regularly use profanity in the workplace." *Id.* None of these assertions, individually or collectively, indicate pretext.

### 2. *Sun's "Report" to Guy-Caffey*

Second, Sun argues that her "attempts to get help from Guy-Caffey in dealing with Mack . . . were ignored." Dkt. 23 at 19. Specifically, her declaration provides:

> Frustrated by Mack's conduct and treatment, I approached his supervisor, Judy Guy-Caffey for help. I asked her for advice on how to deal with him so I could get my work done and not be subject to his race-based comments. Ms. Guy-Caffey did not offer any advice other than to suggest she thought I was wrong. After my report to Guy-Caffey, I was subjected to increased scrutiny at work and I was falsely accused of not working well with my team members and having communication issues.

Dkt. 23-2 at 2. Although the declaration reflects that Sun approached Guy-Caffey for advice about interacting with Mack, there is absolutely no mention anywhere in the summary judgment record of Sun discussing with Guy-Caffey any hostility or apparent racial bias by Mack. This is critical. Sun cites to Guy-Caffey's deposition in support of the assertion that she reported Mack's "hostility and apparent racial bias" to Guy-Caffey, Dkt. 23 at 7, but the deposition testimony says no such thing. Accordingly, this argument is no evidence of pretext.

### 3. *Missing the SPE Paper Submission Deadline*

Third, Sun argues the real reason her paper was not submitted to SPE was "Mack's interference." Dkt. 23 at 19. I fully agree with Sun that "Mack and Guy-Caffey prevented Sun's work from being approved internally before the SPE

8

submission deadline." *Id.* at 8. They did so, however, for good reason. Sun makes no attempt to counter TETRA's assertions that her paper had "several problems, including missing, incorrect data and a faulty conclusion," or that she failed to conduct the experiments Mack and Guy-Caffey believed necessary to "determine the validity of the results discussed in Sun's paper." Dkt. 19 at 14–15.

I may not be a scientist, but federal courts hear and decide complicated technical issues every day. I would happily have entertained, as but one example, an argument from Sun about why her data was sufficient or why the additional testing that Mack and Guy-Caffey wanted was unnecessary. Alas, Sun flat out does not address TETRA's assertions about the deficiencies in her research paper, or her failure to conduct the testing required to bring her paper up to snuff. All Sun does is make a barebone assertion of "sabotage." Dkt. 23 at 8. But the word "sabotage" is nothing more than a naked conclusion. Sun's declaration "does not provide the underlying facts" to support that conclusion. *Owens*, 33 F.4th at 827 n.10. Accordingly, Sun's argument that Mack sabotaged her paper submission is no evidence of pretext.

Moreover, beyond failing to create a fact issue, Sun's refusal to address TETRA's assertions on this issue bolsters TETRA's case. When a party "fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Because Sun has given me no basis whatsoever to question the validity of TETRA's assertions about the deficiencies in her paper and her subsequent performance (as it relates to the paper), I consider it undisputed that: (1) TETRA prevented Sun's paper from being submitted to SPE because it was missing data and contained inaccurate data; and (2) Sun either could not or would not conduct the additional testing required to bring her paper up to TETRA's internal review standards. Just as poor performance is a legitimate, nondiscriminatory reason for a company to terminate an employee's employment, poor quality is a legitimate,

9

nondiscriminatory reason to prevent an employee from publishing a paper under the company's name.

### 4. *Sun's 2019 Merit Increase*

Fourth, Sun highlights that she was "recognized by the CEO for her performance and contributions and given a raise" in the summer of 2019. Dkt. 23 at 19. Importantly, this merit increase *predates* Sun's failure to address her superiors' concerns regarding the quality of her research paper, the lapsed submission deadline, and TETRA's loss of a presentation spot at the SPE Conference. Even if I assume that Sun's merit increase rebuts TETRA's arguments regarding Sun's poor performance in 2018, it does nothing to rebut TETRA's arguments regarding Sun's failure to produce a research paper to TETRA's internal review standards. It is Sun's burden to rebut *each* of the nondiscriminatory reasons TETRA offers. *See Jones*, 8 F.4th at 368. As such, Sun's merit increase is not "substantial evidence" that would refute *all* of TETRA's legitimate, nondiscriminatory reasons for terminating Sun's employment.

### 5. *Replaced by White Employees*

Sun argues that white employees assumed her work performing technical service requests ("TSRs") after she was terminated, thus replacing her, and that this fact demonstrates pretext. *See* Dkt. 23 at 9, 19. TETRA disputes that Sun was replaced at all, but that is not an issue I need to decide. Assuming it is true, being replaced by white employees is a fact that gets Sun past the *prima facie* stage, which I already assumed she could prove. But that is all it does. Being replaced by white employees, on its own, is not "substantial evidence" that refutes TETRA's legitimate, nondiscriminatory reason for terminating Sun's employment.

### 6. *Performance Improvement Plan*

Lastly, Sun argues that TETRA's failure to follow its own internal procedures and place Sun on a formal Performance Improvement Plan ("PIP") demonstrate pretext. It is undisputed that "[i]t is TETRA's established policy to use step discipline and [PIPs] in the event of employee performance shortcomings." Dkt.

10

23 at 10. It is also undisputed that neither Mack nor Guy-Caffey ever placed Sun on a PIP, and "that the notion of an 'informal [PIP] was not TETRA policy." *Id.* at 11. Nonetheless, as the Fifth Circuit has explained: TETRA's "failure to follow its own policy is not probative of discriminatory animus in absence of proof that [Sun] was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (quotation omitted). Here, Sun "has introduced no evidence suggesting that [TETRA] adhered to its disciplinary policies differently in cases involving non-minority employees." *Id.* Simply stating, without citing to the record or providing any underlying facts, that "employees (such as her co-workers Drew Fowler and Phillip Vincent) were treated more favorably" (Dkt. 23 at 13), is not "substantial evidence" of pretext.

\* \* \*

In sum, Sun's race and national origin discrimination claims fail because Sun cannot show that TETRA's legitimate, nondiscriminatory reason for her termination is pretextual.

## CONCLUSION

For the reasons explained above, I recommend that Defendant TETRA Technologies, Inc.'s Motion for Summary Judgment (Dkt. 19) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 17th day of October 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE